And we'll take the next case. Thank you. 315-0500 Steak'n Shake v. Joe Manchin Counsel, you may proceed. Thank you. May it please the Court and Counsel, my name is George Klauke, appearing before you on behalf of Steak'n Shake on appeal of the case of Anderson v. Industrial Commission and Ms. Anderson. The main issue in this case comes down to causation, so I'd like to start with that issue. The Illinois Workers' Compensation Commission, when you look at their decision, although they referenced and made part of their decision, the arbitrator's decision, rests solely on a flawed logical proposition called post hoc ergo proctor hoc. And we, Steak'n Shake, request reversal of the case for petitioner's failure to prove causation. I acknowledge the standard is manifest way. I understand it's a difficult burden, but if the opposite conclusion is clearly apparent, this Court has a duty to correct it. Why is the opposite conclusion so clearly apparent? It is clearly apparent because the facts of the case clearly point out what occurred on May 30, 2008, and what the complaints were of Ms. Anderson after her first visit to Dr. Hoffman, which was the same day. She did not complain of any issues with her thumb. She complained of a swelling on the dorsum of her hand. Was there any dispute that she was wiping the table when something happened? No. Well, she was wiping the table. We're not disputing that, are we? Pardon me? We're not disputing she was wiping the table, right? No, she was wiping the table. The dispute on that is whether that is something that is an increased risk over that of the general public, which is more to my accident argument. But I believe the strongest argument is causation here, because when she goes to Dr. Hoffman, she doesn't say anything about her thumb. She says she has swelling in the dorsum of her hand. Dr. Hoffman then, by the way, there's no mention of a work-related event at Dr. Hoffman, which occurred the same day as her event. He sends her to Dr. Trena. And the first visit to Dr. Trena, he finds tenderness over the second metacarpal, not the thumb, not the CMC joint. That's a completely separate part of the body. And again, there was no indication of any relationship to her work in those records. Then Dr. Trena says in June of 2008, it's not related. He does that in a disability form that he checks a box. Well, why did she report this accident to me? Is there any dispute that, you know, after she was wiping the table, she couldn't be? There's no, I really don't have a, I mean, the notice of offense is because of the notice of the thumb. You know, I mean, she told somebody at work that her hand, she had pain in her hand, and she left work early and she went to the doctor. Okay, so now you're on a causation, but here's the question. I mean, the commission found that the claimant was asymptomatic prior to this wiping issue on May 30th. So you have somebody, can't they infer causation when there's a lack of symptoms? She's wiping the table rapidly, and all of a sudden she has a problem with her hand. What's wrong with that argument? Well, that's the post hoc ergo proctor hoc proposition. I think you need something more. Here we have a subsequent doctor, Dr. Trena, in which she says she had pain before. Now, it's only one reference, but it does say she had this problem before. And so you have that, and you have the lack of a diagnosis of the thumb until the MRI, which is done two months later, and showed, in my opinion, incidentally, that there was degeneration in the thumb. Now, you've hit on something that makes sense. Okay, let's assume you're correct, though. You're absolutely 100 percent correct on the evidence there was a degenerative condition. Okay? It's asymptomatic before the incident at work. So why would recovery be denied? The employer takes the employees as they find them, don't they? They do. But you still need to establish a causation between the condition and the event. And here? Asymptomatic before the event, symptomatic after the event, and that means it takes it out of post hoc ergo proctor hoc. We can debate on whether it's hoc or hoc. That's ecclesiastical or similar. But the fact of the matter is, it's not simply after this, therefore because of this. Before the event, she's asymptomatic according to the evidence. That's your testimony. I mean, there's nothing wrong with me. In fact, even your expert said the same thing, that there was evidence she was asymptomatic. So this isn't a question of just looking at the event and seeing the condition after the event is the result of the event. It's asymptomatic before the event, the event, and symptomatic. And that's a chain of events theory, which the commission's entitled to use, aren't they? They may, except then they're ignoring the history to her doctor that says, I had a problem with this before. So this is a progression. This is a degenerative thumb. And by the way, again, that diagnosis was made after the MRI two months later. And Dr. Wysocki, by the way, who's the only credible doctor that provided an opinion, in other words, Dr. Treanor, her own physician who said not work-related. So Dr. Rohde's opinion was discounted summarily. And so we're left with Dr. Wysocki. And if you read the opinion of the commission and the arbitrator, they say Dr. Wysocki is the most credible person here. And we're going to read his opinion liberally and turn it 180 degrees and say that he said it was work-related. That's not what happens. Wait a minute. See if I'm quoting this accurately. But let's get to the, you know, if you want to finish down, let's finish on that. The commission noted, even Dr. Wysocki acknowledged that the claimant was symptom-free prior to the alleged accident. Is that much true? Did Wysocki note that? Except, well, in his testimony, he may have stated that, but then he stated that she had a problem and she noticed it in the. But at one point he said that, correct? He probably said that. I don't know specifically. Symptom-free and the table-wiping caused symptom manifestation. Didn't he say that? He said manifestation. How does that not support the claimant in a sense? I believe, well, because if you read his deposition, his deposition says this is not real. What he meant by manifestation is not what we in the legal community mean as manifestation. He meant she felt pain at work. How do we know that? Well, because his opinion is really clear. It says that her condition in her thumb is not in any way related to this event. Then why does she all of a sudden have symptoms if it's not related to the event? Because it's related to her degenerative condition in her thumb, which, by the way, she didn't complain of until – she's very opportunistic in my opinion because – Is that in the record? No, it's not in the record. I'll withdraw. I think you should. I'll withdraw. But I think the commission turns the opinion of Dr. Wysocki on its head. If you read his opinion, several times throughout his opinion he states this is not cause related to wiping a table. She didn't strike her hand. She didn't complain that she was lifting something at the time. She said she was busy. Being busy at work is not a greater risk of injury. No, wiping the table 100 times would be. That's not in the record. No, but she said they were busy as all get out, and they can infer this wasn't somebody at home who wiped the table, a dining room table after dinner. Do you want to really hang your hat on? She wasn't wiping tables, really? Well, I mean, that's something that this court I guess has to decide whether the commission made a proper inference there. In my view, when you look at the body part complained of after the event, the later MRI showing a different problem in the thumb. Once she starts treating for the thumb and she has surgery, you know, she's on this medical odyssey that goes on forever. And it's very unfortunate. But the thumb is not related to the event that she claims occurred on May 30th, 2008. As you position that, if you're hypothetical, there was no Dr. Wazowski, that this decision could not be supported based on the record absent his opinions? I believe it would be quite difficult to do so because I think this case falls then on you have an event and then you have symptoms and then everything's related, even though there's a treating doctor who says not related. But the case law doesn't say that. I mean, you're making an argument. Let me ask you this, just frame it specifically, put you on the point of question. You have a doctor who is credible, clearly says that the incident didn't cause the claimant's injury. Correct. No causal connection opinion. You have a chain of events on the other side. Are you saying that the doctor's opinion must always carry the day over a chain of events? Is there a case law that says that? I do not believe there is case law. I don't think it does. I do not believe there's case law that says that. On the other hand, the manifest weight of the evidence is you have two doctors that have said, one's a treating doctor, one's an examining doctor, that said this isn't related. So I think the commission and the commission says, you know, the evidence and testimony appears consistent and supportive, that petitioner sustained in May 30, 2008. There is evidence in support of causal relationship noted in the medical records, but they don't say what it is. And if you look at the medical records and if you look at the testimony of the doctors, they say it's not related. You know, this is one of the, we've talked about manifest weight of the evidence. We've stated in many opinions over the years that the test is whether there's any evidence in the record to support the finding of the commission. So it says any evidence. Now, whether it's artfully drafted or not or composed, it says any evidence. That was why I asked you to eliminate Wasaki. Okay? What is there? Eliminate Treanor. What is there? And if what is left is any evidence to support the decision, we have said that's not against the manifest weight of the evidence. Ergo the chain of events. I don't believe there's any evidence. Well, let's say. I mean, I know you understand. You know, that's my argument. Right. And so what you have to do is probably direct what's left in there and destroy it. I mean, in your argument, if you can, to prevail. Okay. Well, getting to accident defense then. Again, there's no greater risk. And you're right within half a minute of your time. Half a minute. Okay. Well, and then, therefore, then I want to thank you for your time and consideration. And we would ask the court to reverse the Workers' Compensation Commission and find that Petitioner or Ms. Anderson failed to prove causal connection or accident. Thank you. Thank you, counsel. Counsel may respond. May it please the court. I'm Dan Cusack from Purell, and I represent Joan Anderson. Every single issue, and I think there's about five that George picked, my able opponent, Mr. Klotke picked on, are related to factual determinations. I mean, there's really no ‑‑ there's not a heck of a lot of case law to argue about on this. I agree that I think Wysocki, and I think the commission and the arbitrator found that Wysocki and Rohde both combined gave enough medical information to say that this problem was caused by work. And the testimony of Joanie, and you remember the exact words, we're busy as all get‑out. I mean, that's her job, and she testified to that. And if you've ever eaten at Steak and Shake down in Peoria around that time, it is a busy as all get‑out, and so she does what she has to do. And she also ‑‑ and she says specifically, when I did that, I heard a pop and I felt great pain, pain like I've never felt before. To drop back a little bit, George talks about she'd had this problem before. No, she hadn't. She had one mention to Dr. Trena about hand pain. And that was way before, that's it. You know, no deposition, no nothing, one record. And she was doing fine. She was asymptomatic, and you picked up on that, because she was asymptomatic before this happened. To really narrow in on Wysocki, I think he's saying this in the most favorable light to George. He's saying it didn't cause the arthritic condition, but it sure as heck made it symptomatic, which gave her pain, which set her on the boat to these four terribly painful operations. That's ‑‑ And to be compensable, the work didn't have to cause the arthritic condition. I'm sorry, Justice. I said to be compensable, the work activity didn't have to cause the arthritic condition. It's not the issue. No, no. I'm just trying to say that I'm ‑‑ I agree with you. I'm just saying that, you know. Absolutely. Absolutely. This is a factor. Temporally, it's a factor. Medically, it makes sense. Touch on the other issues that George raises arising out of the course. That's her job as a manager. You pitch in and do it. She's supposed to do that, among a number of other things. And that was her testimony. And the arbitrator, the commission, say that's unrebutted. It was. If there was other testimony, where was it? It wasn't there. Notice. Same thing. She says she gave notice to two of those people at Steak and Shake. George tells me I've got to produce those managers. It's ridiculous. I don't want to prove his case. There's no discovery. I don't know what they're saying. If George is going to challenge me on notice, then he had better put on some evidence. It's absent. It's unrebutted. Greater risk. You've already said it. She's doing that real fast. You bet. She's not a housewife. It's not the guy that stepped off the curb. It's a different deal here. He didn't mention it, but I will because he mentioned it briefly. The debacle of the surveillance, that's what I call it. They flew people in, it's in the record, from Florida, from Detroit, and brought a guy down from Chicago to talk about all the surveillance. Okay? Discounted. The commission says specifically in their written decision that the surveillance doesn't do anything, say anything against what was testified to. The fact of the matter of the case is really consistent. The commission also mentions that with regard to the medical treatment and the complaints and what she went through. The arbitrator examined that hand, put her through a bunch of mechanisms. You can't see it, but it's, well, I can't read. The arbitrator examined it, looked at it, elicited pain, and the case held its consistency throughout. If they wanted to bring people on notice, they should have brought them. TTD. And they asked me about that down in Springfield at the commission. They said, well, what do you think about the TTD? And I said, admittedly, you know, there's no, it's a little hard because training wasn't exactly religious about recording. You can work one-handed, you can't work one-handed. What they did was, though, they looked, they read the record, and they knew the periods off of surgery, and they tried to put that together. And I think there's enough there to, and I agree. The commission cut TTD a little bit. We didn't appeal it. I agree with it because I think it makes good sense. They say she needed maximum medical, complete maximum medical improvement when she saw Dr. Rohde. And that's fine. I mean, with all due respect, I know, and I just want to see if I missed anything, the medical bills. Briefly, we don't want to pay, just pay medical bills once. We don't want to pay twice. There's a couple of church sites that says we're, you know, we don't want to pay them twice. We agree. We agree that Dr. Rohde is a third choice. I don't even know why it's in this brief. We didn't appeal it. We knew we lost that. I think it's a consistent decision. And I'm within my time limit. If there's any questions, I'd be more than happy. Thank you very much. Thank you, Counsel. Thank you. Counsel, you may reply. Thank you. Just briefly, first of all, I can't tell Mr. Kuzak what to do, and even if I did, he wouldn't do it. So with respect to the notice issue. But I do want to briefly hit on temporary total disability. You still need to have an off work note or something that says that you didn't work, but you also could not work. And the numbers of dates that I cited in my brief are the time periods where there was an indication that she was unable to work, and it comes to about 10 weeks. But my main argument, obviously, is the manifest weight and whether an accident occurred. And again, the surveillance is interesting because, as Counsel stated, it's interesting because the testimony of Ms. Anderson indicated she was unable to use her hand. And then the surveillance showed her using her hand. This is an aside. I interrupt. This is a minor point, perhaps. But you were talking about the surveillance. Was there some local television news report that testified the claimant, in her opinion, the videotape had gaps and other signs of possible editing? Yes. I was starstruck at the testimony. And the problem is that she also admitted that somebody turning on a camera and off a camera would make that gap. So you have a surveillance person who shoots footage, stops the camera, then shoots more footage, and that's... So they had a celebrity witness testifying in the case? Is that what you're saying? Yes. Okay. Okay. So just to wrap it all up, again, we would ask that the court reverse this case and find that causation or accident was proven. And if you decide not to do that, then please alter the DTD and reduce the terminus. Thank you. Thank you, Counsel Bull, for your arguments in this matter. It will be taken under advisement. The written disposition shall issue. The court will stand in brief recess.